UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 11, 2006**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL NO. |
| | : | |
| | : | GRAND JURY ORIGINAL |
| | : | |
| v. | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1349 (Conspiracy); |
| STEVEN F. HILL, and | : | 18 U.S.C. § 1344 (Bank Fraud); |
| | : | 18 U.S.C. § 2 (Aiding and Abetting, Causing |
| MOHAMED NGENA, also known as | : | an Act to be Done) |
| MOHAMED GAYENGENA | : | |
| Defendants. | : | |

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE – CONSPIRACY TO COMMIT BANK FRAUD

### INTRODUCTION

At all times relevant to this indictment:

1.  The following banks were financial institutions whose deposits were insured by the Federal Deposit Insurance Corporation: Bank of America, Chevy Chase Bank, SunTrust Bank, and National City Bank.

2.  Premier Services was a fictitious company created by law enforcement that existed in name only and was used for the purposes of facilitating a counterfeit check fraud investigation. Premier Services purported to have an account at SunTrust Bank with a large balance that was not regularly monitored. All checks drafted on a Premier Services account were false and fraudulent

counterfeit checks in that Premier Services was not an operating business and did not maintain authorized checks.

3.   A coconspirator known to the grand jury maintained multiple bank accounts at a Las Vegas, Nevada branch of Bank of America in the name of Dan's Cleaning Service, an organization which operated in and affected interstate commerce.

## THE CONSPIRACY

4.   From between on or about May 5, 2004 until on or about March 12, 2005, in the District of Columbia and elsewhere, defendants STEVEN F. HILL, MOHAMED NGENA, also known as MOHAMED GAYENGENA, Coconspirator A, and others known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, namely, Bank Fraud, that is, to knowingly devise and execute, or attempt to execute, a scheme and artifice to defraud financial institutions and to obtain money owned by and under the custody or control of financial institutions by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

### The Goal of the Conspiracy

5.   The goal of the conspiracy was for the coconspirators, including defendants STEVEN F. HILL, MOHAMED NGENA, also known as MOHAMED GAYENGENA, and Coconspirator A to enrich themselves by fraudulently obtaining monies from financial institutions by means of depositing and presenting for payment false and fraudulent counterfeit checks at various bank branches in the District of Columbia and elsewhere.

**Manner and Means of the Conspiracy**

6.      In order to achieve the goal of the conspiracy, defendants STEVEN F. HILL, MOHAMED NGENA, also known as MOHAMED GAYENGENA, and Coconspirator A, together with others known and unknown to the grand jury would and did use the following manner and means, among others:

7.      The essence of the scheme involved the following: a person known to the grand jury would present to defendants STEVEN F. HILL and MOHAMED NGENA, also known as MOHAMED GAYENGENA, and to other persons known to the grand jury counterfeit checks drawn on the account of Premier Services.  Believing these checks, and other counterfeit checks created by the coconspirators, to be counterfeit and knowing they had no right to any funds from the checks, defendants STEVEN F. HILL and MOHAMED NGENA, also known as, MOHAMED GAYENGENA, then would deposit or attempt to deposit the checks into various bank accounts an effort to cash them.

8.      It was further part of the scheme that:

   a.      Defendant MOHAMED NGENA, also known as MOHAMED GAYENGENA, in the District of Columbia and Maryland would deposit or attempt to deposit into his own bank account counterfeit checks made payable to him and drawn on a bank account of Premier Services.

   b.      In an effort to execute this scheme, defendant MOHAMED NGENA, also known as MOHAMED GAYENGENA, and others known and unknown to the ground jury, would engage in the following acts:

      I.      a person known to the grand jury would obtain counterfeit checks drawn on a SunTrust account of Premier Services payable to MOHAMED NGENA, also known as MOHAMED GAYENGENA.

        ii.    defendant MOHAMED NGENA, also known as MOHAMED GAYENGENA, would open or maintain bank accounts at Chevy Chase and SunTrust banks with the intent of depositing counterfeit checks into those accounts.

        iii.    people known to the grand jury would deliver the Premier Services checks to defendant MOHAMED NGENA, also known as MOHAMED GAYENGENA, with the intent of having him deposit and cash the counterfeit checks.

        iv.    believing them to be counterfeit checks, defendant MOHAMED NGENA, also known as MOHAMED GAYENGENA, would deposit the Premier Services counterfeit checks into one of his bank accounts with the intent of cashing the checks.

        v.    once the money from the checks was fraudently obtained, defendant MOHAMED NGENA, also known as MOHAMED GAYENGENA, would split the proceeds from the counterfeit checks with coconspirators.

        c.    Defendants STEVEN F. HILL and MOHAMED NGENA, also known as MOHAMED GAYENGENA, in the District of Columbia and Las Vegas, Nevada would deposit or attempt to deposit into a bank account of Dan's Cleaning Service counterfeit checks made payable to Dan's Cleaning Service.

        d.    In an effort to execute this scheme, defendants STEVEN F. HILL and MOHAMED NGENA, also known as MOHAMED GAYENGENA, and others known and unknown to the grand jury would engage in the following acts:

        I.    a person known to the grand jury would obtain counterfeit checks drawn on a SunTrust account of Premier Services payable to Dan's Cleaning Service.

    ii. MOHAMED NGENA, also known as MOHAMED GAYENGENA, and a person known to the grand jury would create other counterfeit checks drawn on various bank accounts and payable to Dan's Cleaning Service.

    iii. a person known to the grand jury would deliver the Premier Services and other counterfeit checks to defendant STEVEN F. HILL with the intent of having him and other coconspirators known to the grand jury deposit and cash the checks.

    iv. a coconspirator known to the grand jury would maintain a bank account at a Bank of America branch in Las Vegas, Nevada for the purpose of permitting counterfeit checks to be deposited into the account.

    v. believing them to be counterfeit checks, defendant STEVEN F. HILL and a coconspirator known to the grand jury would in Las Vegas, Nevada deposit the Premier Services and other counterfeit checks into a Dan's Cleaning Service bank account with the intent of cashing the checks.

    vi. once the money from the counterfeit checks was fraudently obtained, defendants STEVEN F. HILL, MOHAMED NGENA, also known as MOHAMED GAYENGENA, and other coconspirators known and unknown to the grand jury would split the proceeds from the counterfeit checks among themselves.

## Overt Acts

 9. Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendants STEVEN F. HILL, MOHAMED NGENA, also known as MOHAMED GAYENGENA, Coconspirator A, and other

coconspirators known and unknown to the Grand Jury, committed the following overt acts, among others:

### A.  Overt Acts (1) - (11) Regarding the D.C. Checks

(1) On or about May 5, 2004, Coconspirator A telephoned a cooperating witness about initiating a counterfeit check scheme.

(2) On or about May 7, 2004, Coconspirator A told the cooperating witness that MOHAMED NGENA, also known as MOHAMED GAYENGENA, had a source at Chevy Chase Bank and that Coconspirator A and MOHAMED NGENA, also known as MOHAMED GAYENGENA, have engaged in a counterfeit check scheme previously.  Coconspirator A further suggested that MOHAMED NGENA, also known as MOHAMED GAYENGENA, would be available to do another counterfeit check scheme with Coconspirators A and the cooperating witness.

(3) On or about May 13, 2004, Coconspirator A, the cooperating witness, and MOHAMED NGENA, also known as MOHAMED GAYENGENA, met in Bladensburg MD to discuss the counterfeit check scheme.

(4) On or about June 3, 2004, Coconspirator A, the cooperating witness, and MOHAMED NGENA, also known as MOHAMED GAYENGENA, met in the District of Columbia regarding the counterfeit check scheme.  During this meeting, the cooperating witness showed Coconspirator A and MOHAMED NGENA, also known as MOHAMED GAYENGENA, three counterfeit checks.  MOHAMED NGENA, also known as MOHAMED GAYENGENA, agreed to cash one of the counterfeit checks in the amount of $1,985.

(5)     On or about June 4, 2004, Coconspirator A, the cooperating witness, and MOHAMED NGENA, also known as MOHAMED GAYENGENA, meet and deposited the $1,985 counterfeit check drawn on a bank account of Premier Services at an ATM machine of a Chevy Chase bank branch in the District of Columbia.

(6)     On or about June 8, 2004, Coconspirator A, the cooperating witness, and MOHAMED NGENA, also known as MOHAMED GAYENGENA, met and traveled to a Chevy Chase bank branch in the District of Columbia for the purpose of depositing a counterfeit Premier Services check in the amount of $7,495.  MOHAMED NGENA, also known as MOHAMED GAYENGENA, attempted to deposit the check into an account by use of an ATM machine, but MOHAMED NGENA, also known as MOHAMED GAYENGENA, learned that his account was not available.

(7)     On or about June 24, 2004, Coconspirator A, the cooperating witness, and MOHAMED NGENA, also known as MOHAMED GAYENGENA, met in the District of Columbia for the purpose of depositing into an account of MOHAMED NGENA, also known as MOHAMED GAYENGENA, a counterfeit Premier Services check in the amount of $9,480.

(8)     On or about June 30, 2004, Coconspirator A, the cooperating witness, and MOHAMED NGENA, also known as MOHAMED GAYENGENA, met and traveled to SunTrust bank branches in the District of Columbia and elsewhere in an attempt to deposit a $9,480 counterfeit Premier Services check.  The cooperating witness provided MOHAMED NGENA, also known as MOHAMED GAYENGENA, $100 to facilitate the opening and initiation of an account for MOHAMED NGENA, also known as MOHAMED GAYENGENA.

(9)     On or about July 7, 2004, the cooperating witness informed Coconspirator A that the cooperating witness had prepared a counterfeit check in the amount of $15, 000, and they discussed the scheme to deposit the check.

(10)     On or about July 20, 2004, the cooperating witness and MOHAMED NGENA, also known as MOHAMED GAYENGENA, met in the District of Columbia and MOHAMED NGENA, also known as MOHAMED GAYENGENA, deposited a counterfeit Premier Services check in the amount of $15,000 into a SunTrust bank account of MOHAMED NGENA, also known as MOHAMED GAYENGENA.

(11)     On or about July 26, 2004, the cooperating witness had a telephone conversation with MOHAMED NGENA, also known as MOHAMED GAYENGENA, in which they discussed that MOHAMED NGENA, also known as MOHAMED GAYENGENA, was withdrawing funds as a result of having deposited and negotiated the $15,000 counterfeit Premier Services check. The cooperating witness and MOHAMED NGENA, also known as MOHAMED GAYENGENA, further discussed the split that each of the coconspirators should receive from the $15,000 check.

### B.  Overt Acts (12)-(24) Regarding the Las Vegas Checks

(12)     On or about June 28, 2004, STEVEN F. HILL and a coconspirator known to the grand jury deposited into a Bank of America bank branch in Las Vegas a counterfeit check in the amount of $300,000 that had been provide to them by Coconspirator A and MOHAMED NGENA, also known as MOHAMED GAYENGENA.

(13)     On or about June 29, 2004, Coconspirator A, the cooperating witness, and MOHAMED NGENA, also known as MOHAMED GAYENGENA, participated in a telephone

conversation in which they discussed a counterfeit check scheme involving the deposit of a $300,000 counterfeit check in Las Vegas.

(14) On or about August 8, 2004, Coconspirator A, the cooperating witness, and STEVEN F. HILL participated in a telephone conversation in which he cooperating witness agreed to produce a counterfeit check and send it to STEVEN F. HILL for him to deposit and cash.

(15) On or about September 1, 2004, Coconspirator A, the cooperating witness, and STEVEN F. HILL participated in a telephone conversation in which STEVEN F. HILL provided account and routing information concerning a bank account relating to Dan's Cleaning Service, an account in which the previously discussed counterfeit check should be deposited. STEVEN F. HILL advised the cooperating witness that he will receive half the amount of the counterfeit check as proceeds for the transaction.

(16) On or about November 30, 2004 and while in the District of Columbia, the cooperating witness provided Coconspirator A with a counterfeit Premier Services check in the amount of $15,000. Coconspirator A placed a telephone call to STEVEN F. HILL about the counterfeit check and arrangements were made for Coconspirator A to express mail the counterfeit Premier Services check to STEVEN F. HILL.

(17) On or about December 1, 2004, a coconspirator known to the grand jury received the $15,000 counterfeit Premier Services check and deposited it into a Dan's Cleaning Service account at a Bank of America branch in Las Vegas.

(18) On or about December 13, 2004, STEVEN F. HILL and a coconspirator known to the grand jury withdrew cashier's checks as proceeds from the $15,000 counterfeit Premier Services check.

(19)     On or about December 16, 2004, STEVEN F. HILL, Coconspirator A, and the cooperating witness participated in a meeting in the District of Columbia during which STEVEN F. HILL provided the cooperating witness with proceeds from the $15,000 counterfeit Premier Services check deposited in Las Vegas. STEVEN F. HILL further explained why the proceeds were smaller than expected and discussed methods used by STEVEN F. HILL and other coconspirators to make fraudulent transactions appear legitimate.

(20)     On or about January 10, 2005, Coconspirator A, the cooperating witness, STEVEN F. HILL, and an undercover law enforcement officer participated in a telephone conversation in which STEVEN F. HILL discussed the $15,000 counterfeit Premier Services check deposited in Las Vegas, how STEVEN F. HILL and other coconspirators create paperwork to make fraudulent transactions appear legitimate, and STEVEN F. HILL suggested he could handle a counterfeit check in an amount of $500,000.

(21)     On or about March 1, 2005, Coconspirator A and the cooperating witness traveled to Las Vegas to meet STEVEN F. HILL and a coconspirator known to the grand jury, and all four people met in Las Vegas and discussed the deposit of a $500,000 counterfeit check.

(22)     On or about March 2, 2005, Coconspirator A, the cooperating witness, STEVEN F. HILL, and a coconspirator known to the grand jury met and traveled to a Bank of America branch in Las Vegas where a coconspirator known to the grand jury attempted to deposit into a Dan's Cleaning Service account a $500,000 counterfeit Premier Services check. A coconspirator known to the grand jury provided the cooperating witness with a Bank of America business card and told him that he should wire the money from the account because of the delay required to be able to obtain cash were the counterfeit check deposited as they had planned.

(23)  On or about March 9, 2005, Coconspirator A and STEVEN F. HILL participated in a telephone conversation in which STEVEN F. HILL suggested plans for the $500,000 counterfeit Premier Services check to be deposited in a Bank of America branch in the District of Columbia.

(24)  On or about March 11, 2005, STEVEN F. HILL, the cooperating witness, and an undercover law enforcement officer participated in a telephone conversation in which they discussed problems with depositing the $500,000 counterfeit Premier Services check.  STEVEN F. HILL informed the cooperating witness and the undercover law enforcement officer that STEVEN F. HILL had made arrangements for the $500,000 counterfeit Premier Services check to be deposited at a Bank of America branch in the District of Columbia using a Dan's Cleaning Service account.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1349 and 2)**

### COUNTS TWO THROUGH EIGHT – BANK FRAUD

1.  Paragraphs 1- 3 and 5-9 contained in Count One are re-alleged and are incorporated herein by reference.

### THE BANK FRAUD SCHEME

2.  From on or about at least May 5, 2004, through on or about at least August 27, 2004, MOHAMED NGENA, also known as MOHAMED GAYENGENA, Coconspirator A, and others known and unknown to the grand jury devised and executed, or attempted to execute, a scheme to knowingly steal more than $33,000.00 from Premier Services and financial institutions by creating counterfeit checks drawn on an account of Premier Services and then, in the District of Columbia or Maryland, depositing or attempting to deposit those counterfeit checks into bank accounts

affiliated with MOHAMED NGENA, also known as MOHAMED GAYENGENA, at Chevy Chase Bank or SunTrust Bank. It was further part of the scheme that once deposited, MOHAMED NGENA, also known as MOHAMED GAYENGENA, and others known and unknown to the grand jury would draw out or attempt to draw out money from the checks in an effort to defraud Premier Services, Chevy Chase Bank and SunTrust Bank.

3. From on or about at least May 5, 2004, through on or about at least March 12, 2005, STEVEN F. HILL, MOHAMED NGENA, also known as MOHAMED GAYENGENA, Coconspirator A, and other coconspirators known and unknown to the grand jury devised and executed, or attempted to execute, a scheme to knowingly steal at least $815,000.00 from Premier Services, financial institutions, and others by creating counterfeit checks drawn on an account of Premier Services and others and then, in Las Vegas, Nevada or the District of Columbia, depositing those counterfeit checks into bank accounts affiliated with Dan's Cleaning Service. It was further part of the scheme that once deposited, STEVEN F. HILL and a coconspirator known to the grand jury would draw out money from the checks in an effort to defraud Premier Services, Bank of America, National City Bank, SunTrust Bank, and others.

4. From on or about at least May 5, 2004 and continuing through on or about August 27, 2004, within the District of Columbia and elsewhere, MOHAMED NGENA, also known as MOHAMED GAYENGENA, Coconspirator A, and other coconspirators known and unknown to the grand jury devised and executed, or attempted to execute, a scheme and artifice to defraud financial institutions, that is, Chevy Chase Bank and Suntrust Bank, and to obtain money owned by and under the custody or control of financial institutions, that is Chevy Chase Bank and SunTrust Bank, by means of false and fraudulent pretenses, representations and promises, that is by presenting

to the banks listed below the following checks made payable to MOHAMED NGENA, also known as MOHAMED GAYENGENA, knowing that the checks were counterfeit:

| Count | Date | Depositing Bank | Payor | Check /Payor's Bank | Amount |
|---|---|---|---|---|---|
| **Two** | 6/4/04 | Chevy Chase | Premier Services | 3886/SunTrust | $1,985.00 |
| **Three** | 6/8/04 | Chevy Chase | Premier Services | 3942/ SunTrust | $7,495.00 |
| **Four** | 6/22/04 - 6/30/04 | Suntrust | Premier Services | 3942/SunTrust | $9,480.00 |
| **Five** | 7/20/04 | Suntrust | Premier Services | 3972/ SunTrust | $15,000.00 |

5. From on or about at least May 5, 2004 and continuing through on or about March 12, 2005, within the District of Columbia and elsewhere, STEVEN F. HILL, MOHAMED NGENA, also known as MOHAMED GAYENGENA, Coconspirator A, and other coconspirators known and unknown to the grand jury devised and executed, or attempted to execute, a scheme and artifice to defraud financial institutions, that is, Bank of America and National City Bank, and to obtain money owned by and under the custody or control of financial institutions, that is Bank of America and National City Bank, by means of false and fraudulent pretenses, representations and promises, that is by presenting to the banks listed below the following checks made payable to Dan's Cleaning Services, knowing that the checks were counterfeit:

| Count | Date | Depositing Bank | Payor | Check /Payor's Bank | Amount |
|---|---|---|---|---|---|
| **Six** | 6/28/04 | Bank of America | PrevBenefit Co., LLC | 2000/National City Bank | $300,000.00 |

6. From on or about at least May 5, 2004 and continuing through on or about March 12, 2005, within the District of Columbia and elsewhere, STEVEN F. HILL, Coconspirator A, and other coconspirators known and unknown to the grand jury devised and executed, or attempted to execute, a scheme and artifice to defraud financial institutions, that is, Bank of America and Suntrust

Bank, and to obtain money owned by and under the custody or control of financial institutions, that is Bank of America and SunTrust Bank, by means of false and fraudulent pretenses, representations and promises, that is by presenting to the banks listed below the following checks made payable to Dan's Cleaning Services, knowing that the checks were counterfeit:

| Count | Date | Depositing Bank | Payor | Check /Payor's Bank | Amount |
|---|---|---|---|---|---|
| **Seven** | 12/1/04 | Bank of America | Premier Services | 4377/SunTrust | $15,000.00 |
| **Eight** | 3/2/05 | Bank of America | Premier Services | 4464/ SunTrust | $500,000.00 |

**(Bank Fraud and Aiding and Abetting, Causing an Act to be Done, in violation of 18 U.S.C. §§ 1344, 2).**

A TRUE BILL

FOREPERSON.

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA